United States District Court
Southern District of Texas
**ENTERED**
March 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERT DE LA GARZA, | § | CIVIL ACTION NO |
| (TDCJ–CID #00645460) | § | 4:21–cv–03052 |
| Petitioner, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| BOBBY LUMPKIN, | § | |
| Respondent. | § | |

MEMORANDUM ON DISMISSAL

The motion for summary judgment by Respondent Bobby Lumpkin is granted. Dkt 15.

The petition for a writ of *habeas corpus* pending in this action is dismissed with prejudice. Dkt 1.

1. Background

Petitioner Albert De La Garza pleaded guilty to aggravated robbery in June 1993 in Cause Number 0655532, before the 179th Judicial District Court of Harris County, Texas. He was sentenced to thirty years in prison. Dkt 16-2 at 78–79, 86–87.

De La Garza was initially released on parole in July 2008. His parole was revoked in October 2008. He was again released on parole in February 2013. His parole was revoked in October 2014. He was then released on parole for a third time on April 24, 2020. Dkt 15-2 at 3.

A pre-revocation warrant of arrest issued on December 19, 2020 and was executed on December 20, 2020. Dkt 15-2 at 6. De La Garza was notified of his rights in the revocation process and the alleged violations on December 23, 2020. Dkt 15-3 at 1–5. He signed a waiver form that stated, "I do not want a revocation hearing. I understand

that the parole officer has no authority to make promises as to what will happen if I do not have a hearing. I also understand that the Parole Board will, in all probability, revoke." Dkt 15-3 at 5.

His parole was revoked on January 5, 2021. Dkt 15-4 at 4. De La Garza was notified of the results of the hearing waiver on January 8, 2021. Id at 5. He filed a state application for a writ of *habeas corpus* on April 9, 2021. Dkt 16-2 at 27. The Texas Court of Criminal Appeals denied it without written order on July 28, 2021. Dkt 16-1 at 1.

De La Garza filed this federal petition for a writ of *habeas corpus* in September 2021. Dkt 1. He proceeds here *pro se*. He contends that his parole revocation is illegal because his due process rights were violated when:

1. The parole officer's written comments regarding his future dangerousness were unsubstantiated. Dkts 1 at 5 & 6 at 14–21;

2. The parole board's decision to revoke his parole wasn't based on verified facts. Dkts 1 at 7 & 6 at 14–21;

3. The parole officer's written comments regarding his future dangerousness were misleading, depriving him of fair treatment in the revocation process. Dkts 1 at 8 & 6 at 14–21;

4. He wasn't afforded the basic fairness to which he was entitled in the parole revocation proceeding. Dkts 1 at 10 & 6 at 14–21;

5. It was cruel and unusual punishment to revoke his parole during the COVID-19 pandemic, given his pre-existing medical conditions and age of 59. Dkts 1 at 12 & 6 at 21–23;

6. The parole board's decision to revoke his parole based on technical violations deprived him of his right to equal protection. Dkts 1 at 14 & 6 at 23–24;

2

7. He was denied fundamental fairness in the revocation process because the parole board wouldn't have voted to revoke but for the parole officer's comments on his future dangerousness. Dkts 1 at 16 & 6 at 24;

8. The decision to revoke his parole was a grossly disproportionate punishment in light of the "technical" nature of his violations. Dkts 1 at 18 & 6 at 24–25; and

9. The parole board abused its discretion by failing to consider his substance abuse issues that caused him to violate the conditions of his parole. Dkts 1 at 20 & 6 at 25–27.

Respondent moves for summary judgment, arguing that De La Garza's claims lack merit and must be dismissed. Dkt 15 at 1. He submits the following exhibits:

o Affidavit of Charlie Valdez, Program Supervisor III for the Classification and Records Department of the Texas Department of Criminal Justice—Correctional Institutions Division (Dkt 15-2);

o A copy of the revocation hearing notice provided to De La Garza, dated December 23, 2020 (Dkt 15-3);

o A copy of the revocation hearing results provided to De La Garza, dated January 8, 2021 (Dkt 15-4); and

o State *habeas* court records (Dkt 16).

2. Legal standard

a. AEDPA

A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Martin v Maxey,* 98 F3d 844, 847 n 4 (5th Cir 1996); *Bledsue v Johnson,* 188 F3d 250, 255 (5th Cir 1999). But this doesn't undo what AEDPA itself imposes as the standard of review on disputed questions of both law and fact.

3

*As to disputed questions of law,* AEDPA bars federal relief based upon claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); see also *Early v Packer*, 537 US 3, 7–8 (2002); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). The Fifth Circuit holds that a state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d 436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2002). And the Fifth Circuit holds that *an unreasonable application of federal law* means that the decision is "unreasonable, not merely wrong; even clear error will not suffice." *Escamilla v Stephens*, 602 F Appx 939, 941 (5th Cir 2015, *per curiam*), quoting *White v Woodall*, 572 US 415, 419 (2014). This is a high bar. To surpass it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015), quoting *Harrington v Richter*, 562 US 86, 103 (2011).

*As to disputed questions of fact,* AEDPA precludes federal relief unless the adjudication by the state court of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d)(2); see also *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC § 2254(e)(1). This presumption of correctness extends not only to express

4

factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the Supreme Court instructs that the reviewing court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v Cain*, 576 US 305, 313–14 (2015), quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, § 2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error had "substantial and injurious effect." *Brecht v Abrahamson*, 507 US 619 (1993); for example, see *Hughes v Quarterman*, 530 F3d 336, 345 (5th Cir 2008). This high bar isn't met where evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). There must be more than a mere reasonable possibility that it contributed to the verdict. *Brecht*, 507 US at 638. But where a court is confident that the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

b.   AEDPA and Rule 56

The Fifth Circuit holds that Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." *Clark v Johnson*, 202 F3d

5

760, 764 (5th Cir 2000). But where Rule 56 and the rules governing *habeas corpus* petitions conflict, the latter controls. *Austin v Davis*, 647 F Appx 477, 483 (5th Cir 2016, *per curiam*); see also *Torres v Thaler*, 395 F Appx 101, 106 n 17 (5th Cir 2010, *per curiam*) (citations omitted). As such, the presumption of correctness mandated by § 2254(e)(1) "overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Austin*, 647 F Appx at 483 (citation omitted); cf *Anderson v Liberty Lobby*, 477 US 242, 255 (1986) (stating typical summary-judgment standard in civil cases).

An articulated opinion from a state court has natural pertinence to resolution of disputed questions of both law and fact on *habeas corpus* review. But some state-court decisions reach a conclusion without such articulation. What then? The Fifth Circuit holds, "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v Johnson*, 194 F3d 641, 651 (5th Cir 1999), quoting *Lott v Hargett*, 80 F3d 161, 164 (5th Cir 1996). This is because a presumption exists that later, unexplained orders rejecting a federal claim are decided on the same basis as earlier, reasoned orders resting upon the same ground. *Ylst v Nunnemaker*, 501 US 797, 803 (1991). This also accords with decisional practice of the Texas criminal courts. The Texas Court of Criminal Appeals holds that a statement of *denial* of a state application for a writ of *habeas corpus* without written order signifies an adjudication that the court below reached the correct ruling on the merits—as compared to a statement of *dismissal*, which means only that the claim was declined on grounds other than the merits. *Ex parte Torres*, 943 SW2d 469, 472 (Tex Crim App 1997, *en banc*); see also *Singleton v Johnson*, 178 F3d 381, 384 (5th Cir 1999).

Even so, the state court's decision will at times be unaccompanied by explanation, with no level of review having issued a reasoned opinion. The Supreme Court

holds in such situations that "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see *Salts v Epps*, 676 F3d 468, 480 n 46 (5th Cir 2012) (applying *Harrington*).

### 3.   Denial of due process (Grounds 1–4, 7, & 9)

In *Morrissey v Brewer*, the Supreme Court held that the constitutional right to procedural due process applies to parole revocation hearings and provides at least informal procedural protections to parolees. This came with recognition that "not all situations calling for procedural safeguards call for the same kind of procedure." 408 US 471, 481 (1972). It there outlined the minimum constitutional requirements for the two critical stages in the parole revocation process.

*First,* in the preliminary hearing, the State determines "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 US at 485. There may be a substantial lag time between the parolee's arrest and subsequent determination of whether parole should be revoked. The Supreme Court recognized the need for "some minimal inquiry" that would take place "as promptly as convenient" to determine whether the parolee should be incarcerated pending a final determination by the parole board. It also indicated at least three procedural protections at the preliminary hearing stage: (1) notice to the parolee that parole violations have been alleged, and that a hearing will take place for the purpose of determining whether probable cause exists to believe any violation has occurred; (2) ability of the parolee to  appear and speak in his own behalf at the hearing, and to bring letters, documents, or individuals who can give relevant information to the hearing officer; and (3) persons who have given adverse information on which parole revocation may be based are to be made available upon request of the parolee for questioning in his presence, but such person needn't be subjected to confrontation and

7

cross-examination if the hearing officer determines that the person would be subjected to risk of harm if such identity were disclosed. Id at 486–87.

*Second,* if the State determines that probable cause exists to believe that the parolee violated the terms of his parole, the State must afford the parolee a final revocation hearing—if he or she so chooses. The purpose of such final hearing goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." Id at 488. The Supreme Court outlined six essential protections required by the Due Process Clause: (1) written notice of the claimed violations of parole; (2) disclosure to the parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such as a traditional parole board, the members of which needn't be judicial officers or lawyers; and (6) a written statement by the fact-finders as to the evidence relied upon and reasons for revoking parole. Id at 489.

The Supreme Court observed, "Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." Id at 483. It stressed that the final revocation hearing should be a "narrow inquiry," yet sufficiently flexible so that the parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Ibid. The goal is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id at 484.

8

Applying these requirements amply demonstrates that De La Garza's due process rights weren't violated. He received notice of the parole violations on December 23, 2020. He was charged with the following five violations:

1) Rule #: 3
I shall reside in a specified place as approved by my supervising officer.
On or About or Since: 12/18/2020
At/About: 13834 Aldine Westfield Houston, TX Comp/Adj: Failure to reside in a specified place as approved by my supervising officer.

2) Rule #: 8 T
I shall comply with Electronic Monitoring program.
On or About or Since: 12/18/2020
At/About: 13834 Aldine Westfield Houston, TX
Comp/Adj: Failure to submit to electronic monitoring program by having a Unable to Connect Violation.

3) Rule #: 8 T
I shall comply with Electronic Monitoring program
On or About or Since: 12/17/2020
At/About: 13834 Aldine Westfield Houston, TX
Comp/Adj: Failure to submit to electronic monitoring program by having a Curfew Violation.

4) Rule #: 8 T
I shall comply with Electronic Monitoring program.
On or About or Since: 12/17/2020
At/About: 13834 Aldine Westfield Houston, TX

> Comp/Adj: Failure to submit to electronic monitoring program by having a Curfew Violation.
>
> 5) Rule #: 8 T
>
> I shall comply with Electronic Monitoring program.
>
> On or About or Since: 12/18/2020
>
> At/About: Houston, Harris County, Texas
>
> Comp/Adj: Failure to submit to electronic monitoring program by having a Battery Violation. Parole Officer Sharon Brown

Dkt 15-3 at 3–4.

De La Garza received written notice of his rights. He acknowledged by his signature on December 23, 2020, that he had the following rights:

> Rights of the Offender in the Revocation Process
>
> It is alleged that you have violated one or more of the rules/conditions of your release. Your rights in the revocation process are listed below.
>
> 1.    You have the right to be personally served with written notice of the rules and conditions you are accused of violating. That means you have the right to have someone give you written information of what conditions of release you are accused of breaking.
>
> 2.    You have the right to have a preliminary hearing if you have not been convicted of a new offense. This hearing will be held at or near the place of the alleged parole or mandatory supervision violation. The purpose of the preliminary hearing is to determine whether there is probable cause or reasonable grounds to believe you violated a condition of release.

10

3.     You have the right to have a revocation hearing if you are alleged to have committed technical violations or you are found guilty in a criminal case. However, if you receive a felony conviction with a term of incarceration in a penal institution, you will be allowed only a limited hearing in order to explain why you should not be revoked. You must request this mitigation hearing.

4.     You have the right to a disclosure of evidence against you. That means you can see everything before the hearing.

5.     You have the right to a state appointed attorney under certain circumstances to be determined by a hearing officer. If you qualify for that right, an attorney will be appointed to represent you. If you do not qualify for that right, you may hire an attorney to represent you.

6.     You have the right to be heard in person by telling a hearing officer what happened and to present evidence such as witnesses, affidavits, letters and documents in support of your position.

7.     You have the right to confront and cross-examine adverse witnesses by asking questions at the hearing unless the hearing officer specifically finds good cause for not allowing you to do so.

8.     You are entitled to be heard on the violations by someone designated by the panel.

9.     If your parole or mandatory supervision is revoked as a result of a hearing, you will receive a written report by the hearing officer which sets forth the

> evidence relied upon in support of a finding
> that you violated one or more conditions of
> your parole or mandatory supervision.
>
> 10.   If revoked as a result of a hearing, you
> may have the right to request that the
> Board of Pardons and Paroles reopen the
> revocation hearing within sixty [60] days
> from the date of the Board's decision.

Dkt 15-3 at 2.

De La Garza had the opportunity to exercise his right to a hearing where he would have been able to be heard in person, to present witnesses and documentary evidence on his behalf, and to receive the conditional right to cross-examine and confront witnesses. Ibid.

De La Garza elected to waive his right to a revocation hearing. Dkt 1 at 10. De La Garza signed the following waiver:

> I do not want a REVOCATION hearing. I
> understand that the parole officer has no
> authority to make promises as to what will
> happen if I do not have a hearing. I also
> understand that the Parole Board will, in
> all probability, revoke. I have not been
> coerced into signing this waiver.

Dkt 15-3 at 5.

The parole officer recommended that De La Garza's parole be revoked. Dkt 15-4 at 3. De La Garza denied all of the parole violations. Dkt 15-4 at 2–3. A Parole Board Analyst Craig Brian sustained all five allegations. Ibid. The parole officer further commented, "The offender has shown that he has no intentions on abiding by his parole certificate. The client has a violent history and if released back to supervision it will only be a matter of time before he hurts someone." Id at 4.

Finally, De La Garza's parole revocation was decided by a neutral decision-maker, and he was notified of the evidence relied on and reasons for revocation of his parole

12

on January 8, 2021. Dkt 15-4 at 5. He acknowledged receipt of the hearing waiver results. Ibid.

As such, his revocation proceeding appears to have satisfied all of *Morrissey*'s requirements. 408 US at 480. De La Garza filed a state application for a writ of *habeas corpus* in April 2021, which the Texas Court of Criminal Appeals denied without written order in July 2021. Dkts 16-1 at 1 & 16-2 at 27. This places the burden on De La Garza to show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see also *Salts*, 676 F3d at 480 n 46 (applying *Harrington*). He fails to meet his burden.

De La Garza complains of a denial of due process during his parole revocation proceedings. Dkt 1 at 5–20. These grounds overlap, and the facts offered to support them are repetitive.

*In ground one,* De La Garza argues that the parole officer's written comments regarding his future dangerousness violated his right to due process. Dkts 1 at 5 & 6 at 14–21. He states that he was released on parole in 2008, and it was revoked for a technical violation. He was again released on parole in 2013 after completing a substance abuse therapeutic program, and it was again revoked for a technical violation. Dkt 6 at 2. He completed another substance abuse program and was released on parole in 2020. He was required to reside at a halfway house and required to comply with a 7:00 PM curfew. In December 2020, he suffered a relapse when he consumed alcohol and cocaine. Dkt 6 at 3. He missed the curfew by twenty minutes, and he was evicted from the halfway house. Dkt 6 at 7–8.

In this regard, De La Garza states that he doesn't challenge the due-process requirements of *Morrissey*. He complains of a fundamental lack of fairness. Dkt 24 at 6. The parole officer further commented, "The offender has shown that he has no intentions on abiding by his parole certificate. The client has a violent history and if released back to supervision it will only be a matter of time before

13

he hurts someone." Dkt 15-4 at 4. He also argues that the parole officer's prejudicial comment about his future dangerousness caused the revocation of his parole. De La Garza maintains that his prior parole violations weren't violent but were instead technical violations. And after each prior violation, he surrendered to law enforcement. He argues that a person who surrenders doesn't intend to hurt someone. Id at 9.

*In ground two,* De La Garza argues that the Board's decision to revoke his parole was "not based on verified facts," violating his right to due process. Dkts 1 at 7 & 6 at 14–21. He argues that the Board improperly relied on the false information provided by the parole officer regarding his future dangerousness. He complains that the Board revoked his parole on unsubstantiated allegations. He thought the Board would consider only the five violations, not the comment by the parole officer. Dkt 6 at 10.

*In ground three,* De La Garza argues that the parole officer's written comments regarding his future dangerousness were misleading, depriving him of fair treatment in the revocation process. Dkts 1 at 8 & 6 at 14– 21. He complains that the parole officer's comments about De La Garza's future dangerousness weren't sub- stantiated. Dkt 6 at 4. He explains that none of his prior parole violations involved violence. All of his parole violations were technical and didn't involve new offenses.

*In ground four,* De La Garza argues that he wasn't afforded the basic fairness to which he was entitled in the parole revocation proceeding. Dkts 1 at 10 & 6 at 14–21. He says that his right to notice of violation was violated. He complains that the parole officer's statement about his future dangerousness should have been disclosed to him. Dkt 24 at 31. He states that he waived his right to a revocation hearing to show that he wanted to be held accountable. Id at 33. He asserts that the statement that his parole would in all probability be revoked was no longer true because of the new dangers posed by the pandemic. He observed several parolees who waived a hearing who were

14

later released on parole. He argues that this is the Board's new unwritten rule.

*In ground seven,* De La Garza argues that he was denied fundamental fairness in the revocation process because the parole board wouldn't have voted to revoke but for the parole officer's comments on his future dangerousness. Dkts 1 at 16 & 6 at 24.

*In ground nine,* De La Garza argues that the parole board abused its discretion by failing to consider his substance abuse issues that resulted in the violations. Dkts 1 at 20 & 6 at 25–27. He states that he has a long history of drug and alcohol abuse. He argues that he suffered a relapse that caused him to commit technical violations of his parole. He maintains that the Board had other treatment options and didn't have to revoke his parole and return him to prison.

The problem for De La Garza is that the record discloses that the Board revoked De La Garza's parole based on five separate violations. For instance, in this regard, a single violation of a condition of community supervision is sufficient to warrant revocation in Texas. *Blackmon v Thaler*, 425 F Appx 375, 376 (5th Cir 2011). And the Fifth Circuit holds that, when reviewing a decision to revoke supervised release based on several alleged violations, the record need only support a violation of a single condition of release in order to be upheld on appeal. *United States v McCormick*, 54 F3d 214, 219 n 3 (5th Cir 1995); *Frick v Quinlin*, 631 F2d 37, 39 (5th Cir 1980) (same).

Any one of the five separate violations found against De La Garza could serve as an independent basis to revoke his parole. Revocation was therefore warranted. And in this respect, "a habeas court need not consider a constitutional challenge to a conviction or violation used to revoke a prisoner's parole when other valid violations of parole were found." *Blackmon*, 425 F Appx at 376, citing *Spann v Wainwright*, 431 F2d 482, 482 (5th Cir 1970).

15

Notably, De La Garza doesn't argue that he wasn't convicted of the law violation. He doesn't argue that revocation was improper based on the law violation alone. Because he cannot show that but for the errors of which he complains the outcome would have been different, any alleged error is harmless. See *Briseno v Cockrell*, 274 F3d 204, 211 (5th Cir 2001). Absent any evidence in the record, De La Garza can't show that the parole board abused its discretion to revoke his parole.

Beyond this, De La Garza's claim that his parole revocation violated his right to due process is conclusory, unsupported by the record, and will be dismissed as meritless. As stated by the Fifth Circuit, "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983).

In sum, De La Garza hasn't met his burden to show that there was no reasonable basis for the state court to deny relief. He has shown neither that the Board violated his due process rights, nor that the state *habeas* court's rejection of this claim was unreasonable or contrary to federal law. The due process claim is without merit and will be dismissed.

### 4. Imposition of cruel and unusual punishment (Grounds 5 & 8)

A petitioner may seek *habeas* relief under 28 USC § 2241 if he's "in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2241(c)(3). A petition for a writ of *habeas corpus* is thus the vehicle by which "to seek release from custody." *Carson v Johnson*, 112 F3d 818, 820 (5th Cir 1997), citing *Pugh v Parish of St Tammany*, 875 F2d 436, 439 (5th Cir 1989). But more, review on *habeas corpus* exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v United States*,

525 F2d 933, 935–36 (5th Cir 1976). "Simply stated, habeas is not available to review questions unrelated to the cause of detention." Id at 935.

*In his fifth ground,* De La Garza asserts that it is cruel and unusual punishment to revoke his parole during the COVID-19 pandemic, given his pre-existing medical conditions and age of fifty-nine. Dkts 1 at 12 & 6 at 21–23. He states that he suffers from diabetes, cardiovascular disease, manic depression, alcoholism, and drug addiction. Dkt 6 at 4. He also argues that other states released technical violators during the pandemic and notes that Texas Governor Greg Abbott refused to do so. De La Garza states that his parole violations were technical, not violent, and related to his alcoholism and drug addiction. He also surrendered soon after learning of the violations. Dkt 24 at 15. He argues that revoking his parole during the pandemic was a death sentence. Id at 16.

*In his eighth ground,* De La Garza complains of the Board's decision to revoke his parole and return him to prison for the remainder of his sentence, arguing such action was an abuse of discretion because of the severity of the sanction in relation to the parole violations. De La Garza argues that he committed a technical violation and didn't commit a new crime. He further notes that he voluntarily surrendered himself to the Harris County Sheriff's Office. He maintains that the revocation of his parole for the commission of a technical violation is such a disproportionate sanction in relation to the conduct he engaged in that the decision was an abuse of discretion which resulted in a denial of constitutional rights. Dkts 1 at 18 & 6 at 24–25.

De La Garza doesn't challenge his conviction in grounds five and eight. Nor does he assert claims related to the cause or duration of his detention. Such claims are to that extent not cognizable on petition for a writ of *habeas corpus*. Indeed, Fifth Circuit precedent provides that unconstitutional conditions of confinement don't warrant *habeas corpus* relief—not even conditions that putatively

17

create a risk of serious physical injury, illness, or death. *Spencer v Bragg*, 310 F Appx 678, 679 (5th Cir 2009), citing *Carson v Johnson*, 112 F3d 818, 820–21 (5th Cir 1997); see also *Rourke v Thompson*, 11 F3d 47, 48–49 (5th Cir 1993). Even allegations of mistreatment that amount to cruel and unusual punishment don't nullify an otherwise lawful incarceration or detention. *Cook v Hanberry*, 596 F2d 658, 660 (5th Cir 1979); see also *Lineberry v United States*, 380 F Appx 452, 453 (5th Cir 2010). Rather, the proper remedy for unconstitutional conditions of confinement should be equitable—to enjoin the unlawful practices that make the conditions intolerable. See *Cook*, 596 F2d at 660.

Even construed leniently, De La Garza at base complains in this regard about the threat of infection and the conditions at the Stringfellow Unit. Such complaints are unrelated to the cause or duration of his detention. See *Rice v Gonzalez*, 985 F3d 1069, 1070 (5th Cir 2021); *Francois v Garcia*, 509 F Supp 3d 668, 674 (SD Tex 2020).

The petition for writ of *habeas corpus* will be dismissed for lack of subject-matter jurisdiction.

It should be noted that the Fifth Circuit holds that action under 42 USC § 1983 is the proper litigation vehicle where a favorable determination will not automatically entitle an inmate to accelerated release. *Carson*, 112 F3d at 820–21, citing *Orellana v Kyle*, 65 F3d 29, 31 (5th Cir 1995). This includes actions attacking "unconstitutional conditions of confinement and prison procedures." *Carson*, 112 F3d at 820, citing *Cook v Texas Department of Criminal Justice Transitional Planning Department*, 37 F3d 166, 168 (5th Cir 1994); see also *Schipke v Van Buren*, 239 F Appx 85, 85–86 (5th Cir 2007).

Consideration has been given in this regard to whether De La Garza's fifth and eighth grounds should be severed and transferred for filing as a new civil rights action. This presents practical difficulties. See *Glaus v Anderson*, 408 F3d 382, 388–89 (7th Cir 2005). For instance, converting the petition would make De La Garza responsible for the $350 filing fee applicable to civil rights

18

actions, rather than the $5 filing fee for *habeas* petitions. 28 USC § 1914(a).

Beyond this, action under Section 1983 also entails a different set of legal rules and consequences beyond the additional filing fee. This includes application of provisions of 28 USC § 1915 if De La Garza elects to proceed *in forma pauperis*, of which subsection (g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

This portion of this *habeas* proceeding will thus not be converted into a civil action under 42 USC § 1983. To the extent that De La Garza has attempted to raise civil rights claims relating to the conditions of his confinement that aren't actionable in this proceeding, those claims will be dismissed without prejudice to re-filing in a separate action governed by 42 USC § 1983 and subject to provisions found in the Prison Litigation Reform Act. And to be clear, nothing in this respect concerns a ruling on the ultimate merits of these claims. But before initiating any further action, De La Garza is admonished to consider the results in at least somewhat analogous litigation with respect to pandemic-related conditions at the Wallace Pack Unit in Grimes County, Texas, which also houses inmates who are disproportionately elderly or with underlying health conditions. See *Valentine v Collier*, 2020 WL 1899274, *1–2 (SD Tex), 956 F3d 797, 799 (5th Cir 2020, *per curiam*), 140 S Ct 1598 (2020), and 960 F3d 707 (5th Cir 2020, *per curiam*).

5.   Denial of equal protection (Ground 6)

The Texas statutory parole scheme distinguishes between parole offenders who have been convicted of a violent offense enumerated in Texas Government Code § 508.149(a) and those who were convicted of other offenses. All prisoners convicted under an offense listed in § 508.149(a) are subject to automatic parole revocation and forfeiture of street time credit. De La Garza was convicted of aggravated robbery, an offense falling within the purview of § 508.149(a).

Fourteenth Amendment jurisprudence recognizes that most legislation necessarily creates classes. *Romer v Evans,* 517 US 620 (1996). The Equal Protection Clause therefore demands only that "all persons similarly situated be treated alike." *Piotrowski v City of Houston,* 237 F3d 567, 578 n 15 (5th Cir 2001). This means that automatic revocation with respect to an offense listed in § 508.149(a) isn't of itself a denial of equal protection. Instead, to demonstrate an equal-protection violation, De La Garza must show that another parole offender also convicted under one of the offenses listed in § 508.149(a) received a lesser sanction.

De La Garza fails to produce any evidence of this sort. He instead claims that other similarly situated parolees didn't have their parole revoked even though they waived their right to a revocation hearing, as did he, on December 23, 2020. Dkt 6 at 23–24, 35. But while he contends that he has been denied equal protection because other inmates have been granted parole and he wasn't, what he doesn't establish is that anyone didn't have their parole revoked having previously been convicted of an offense listed in § 508.149(a)—as he was.

To the contrary, to show an equal protection violation, De La Garza "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v Lynaugh*, 966 F2d 901, 903 (5th Cir 1992), citing *McCleskey v Kemp*, 481 US 279 (1987). This means that De La Garza hasn't alleged or

20

shown that he has been treated differently from other similarly situated inmates. And nothing in the record beyond his conclusory assertion establishes that the parole board had an "unwritten policy" that it wouldn't revoke the parole of "technical rule violators." See Dkts 1 at 14, 16-2 at 24 & 6 at 23.

In sum, De La Garza neither demonstrates disparate treatment, nor alleges facts showing that he was singled out for negative treatment for an impermissible reason. He thus fails to establish a violation of the Equal Protection Clause.

### 6.   Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v McDaniel*, 529 US 473, 484 (2000).

The Court finds that reasonable jurists wouldn't find this Court's assessment of the constitutional claims debatable or wrong. As such, De La Garza hasn't made the necessary showing to obtain a certificate of appealability.

A certificate of appealability will be denied.

### 7.   Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner Albert De La Garza lacks merit.

The motion by Respondent Bobby Lumpkin for summary judgment is GRANTED. Dkt 15.

The petition by Albert De La Garza for a writ of *habeas corpus* is DENIED. Dkt 1.

Any other pending motions are DENIED AS MOOT.

This case is DISMISSED WITH PREJUDICE.

A certificate of appealability is DENIED.

SO ORDERED.

Signed on _____March 30, 2023_____, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

22